**gfrfIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KAJUAN M.,

               Claimant,

      v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

             Respondent.

No. 23 C 50426

Magistrate Judge Jeffrey T. Gilbert

**MEMORANDUM OPINION AND ORDER**

Kajuan M.[1] ("Claimant") appeals the decision of the Commissioner of Social Security[2] ("Commissioner"), denying his applications for disability insurance benefits and supplement security income. Memorandum in Support of Summary Judgment [ECF No. 19] ("Motion"). For the reasons set forth below, the Court grants Claimant's Motion seeking remand. This case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.[3]

**Background**

On December 2, 2021, Claimant applied for disability benefits and supplemental security income, alleging a disability onset date of November 18, 2021. (R.20). His applications were denied initially and on reconsideration after which

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by her first name and the first initial of her last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

[3] The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 7].

Claimant requested a hearing before an Administrative Law Judge ("ALJ"). After conducting a hearing at which Claimant and a vocational expert testified, the ALJ denied Claimant's applications for benefits and concluded he was not disabled under the Social Security Act. (R.20-30). Claimant appealed to the Appeals Council, which denied review, (R.1-7). Accordingly, the ALJ's decision is the final decision of the Commissioner, which is reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since November 18, 2021. (R.23). At step two, the ALJ found that Claimant has the severe impairments of "left shoulder tear and Charcot deformity, and status post open reduction of reverse shoulder arthroplasty with recurrent left shoulder instability, and open reduction with acromiohumeral cerclage." (R.23). The ALJ also found Claimant has "nonsevere impairments including hydrocephalus with shunt, syringomyelia and cervical cord syrinx, hypotension, and congenital left corneal absence with baseline blurry vision" that "result in no more than minimal functional limitations." (R.23.) The ALJ explained "[t]he aforementioned impairments and any other impairments alleged by claimant or mentioned in the medical records are not severe . . .because they have no more than a minimal effect on the claimant's ability to perform basic work activities" or have not persisted for a continuous period of at least 12 months. (R.23.) The ALJ also found Claimant's "medically determinable impairment of depressive disorder with anxiety" was not severe because it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R.23.) The ALJ stated that he "considered all of the claimant's impairments. . . when assessing the claimant's residual functional capacity. . ." (R.23.)

At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or equals a listed impairment. (R.25.) With respect to Claimant's mental impairments, the ALJ undertook the paragraph B

3

analysis and determined that Claimant had no more than mild limitations in any of the four functional areas. (R.23-25.) At steps four and five, the ALJ determined:

> Claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no ladders, ropes or scaffolds, with the [non-dominant] left upper extremity occasionally push and pull, no reaching overhead and occasionally reaching in all other directions.

(R.25.) The ALJ concluded there were jobs in the national economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of rental clerk, counter clerk, and usher, and therefore found Claimant is not disabled. (R.29-30.)

The Court reviews the ALJ's decision deferentially and must affirm the decision if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Seventh Circuit has concluded that an ALJ's decision is "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Though the standard of review is deferential, the court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even if there is adequate evidence in the record to support an ALJ's decision, that decision cannot be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to

4

the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *see also Warnell*, 97 F.4th at 1053-54.

## Analysis

Claimant argues the ALJ failed to build a logical bridge between the evidence and the restrictions included in the RFC because the opinion fails to consider the record evidence regarding the limitations imposed by his left shoulder impairment. Motion [ECF No. 19] at 3-9. Claimant also argues the ALJ failed to consider the aggregate effect of all of his impairments, including those the ALJ determined were not severe. *Id.* Relatedly, Claimant also challenges the ALJ's conclusion that Claimant could perform gainful work in the national economy based on certain hypotheticals posed to the vocational expert (VE) by the ALJ at the hearing. *Id.* at 7-9. Claimant says that during the questioning of the VE, "[t]he ALJ built a hypothetical that lead (sic) to a preclusion of work" but then "walked back" those additional restrictions "without explanation, and in doing so failed to support a finding that work exists" for Claimant. *Id.* at 8. In particular, Claimant describes the VE's testimony that imposing a lifting restriction to ten pounds with frequent limits to less than ten pounds would preclude the light work positions identified by the VE and shift the ALJ's hypothetical into the realm of sedentary work where the inability to use both hands bilaterally would be work preclusive. *Id.* The Commissioner responds that Claimant's arguments effectively mount a challenge to the RFC, which did not include any lifting or hand use restrictions, but contends the RFC was supported by substantial evidence. Defendant's Memorandum in Support of Motion

for Summary Judgment [ECF No. 24] ("Response") at 8.

In the Court's view, there is a logical overlap between the questions of whether the RFC is supported by substantial evidence, including whether the omission of additional limitations on lifting and hand use posed in certain hypotheticals during the questioning of the VE is supported by substantial evidence, and whether the ALJ explained how he considered and resolved the VE's testimony that adding those limitations would be work preclusive. An ALJ's hypotheticals "describe the claimant's conditions and limitations." *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (emphasis added). "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). As discussed further below, the Court agrees the RFC is not supported by substantial evidence with respect to Claimant's ability to use his left arm and left hand.

The ALJ described Claimant's testimony that his left shoulder impairment limited his ability to, among other things, lift, reach, and use his hands, including restricting lifting to 5-10 pounds, left shoulder pain when reaching, and more broadly that "he cannot really do anything with his left arm." (R.26.) The ALJ also described Claimant testimony that he "cannot grasp or hold things on the left after a short period due to pain;" "to having no feelings in his left arm and needing help with buttoning and tying shoes;" "[h]e endorsed inability to reach overhead or in front, and could not use his left upper extremity for anything after he stopped working;" "[h]e has limited mobility in his left arm and hears it pop when walking;" "he endorsed

having little feeling in the left hand and fingers, and difficulty with movement;" "[h]ousehold chores are limited, he has done laundry but has difficulty lifting the laundry basket, and he is able to make a sandwich and use a microwave, but has difficulty lifting pots;" and he "operates the [television] remote with his right hand." (R.26.) The ALJ noted Claimant later testified "to ability to button and zip but to taking longer." (R.26.)

With respect to the medical record, the ALJ described MRI imagery of Claimant's left shoulder taken in February 2021 as showing "profound chronic erosive changes" and a CT "also showed large volume faint calcifications including intramuscular disease, anterior displacement of the residual humeral shaft, anatomic and functional absence of the rotator cuff and labral ligamentous structures." (R.26-27.) An MRI in July 2021 showed "severe deformity of the proximal left humerus and absence of the head/neck." (R.27.) In November 2021, neurosurgery records "reflect a left shoulder rotator cuff tear about 1 year prior" and Claimant reported left shoulder weakness and increased pain with use. (R.27.) On examination, Claimant "demonstrated normal upper and lower extremity strength, diminished vibratory sensation in the entire [left] hand . . ., diminished deep tendon reflexes in the upper extremities, and normal Tinel's sign in the wrists and elbows." (R.27.)[4]

The ALJ's opinion goes on to describe Claimant's ongoing treatment for his left shoulder. (R.27.) In a March 2022 visit for "left shoulder Charcot deformity and

---

[4] The ALJ opinion notes the reference in this record to Claimant's right, rather than his left, hand appears to be in error. (R.27.)

hydrocephalus," Claimant reported "8/10 shoulder pain, and weakness" and on examination Claimant "demonstrated mild tenderness to palpation and limited range of motion." (R.27.) He was prescribed pain medication (Narco). (R.27.) In September 2022, Claimant "endorsed well controlled pain on his current regimen" and had normal examination findings, and his Norco prescription was refilled. (R.27.) But "[o]n November 28, 2022, the claimant underwent an open reduction of reverse total left shoulder arthroplasty with polyethylene exchange." (R.27.) "On follow-up, radiographic imaging showed anterior dislocation again despite upsizing of components and another surgery recommended." (R.27.) On December 7, 2022, Claimant was assessed by an orthopedic surgeon with "recurrent left shoulder instability after reverse shoulder replacement and recommended acromiohumeral cerclage to maintain the reduction." (R.27.) On December 15, 2022, Claimant underwent the recommended "open reduction of the left shoulder" with exchange of the component and cerclage. (R.27.) A month later, in January 2023, "radiographic imaging showed anterior dislocation of the prosthesis," the prothesis was pushed back into place, and there was "consideration of future revision surgery . . ." (R.27.) In March 2023, Claimant was referred by his pain clinic to the Saint Anthony Medical Center for his left shoulder pain. (R.27.) During this visit, Claimant "endorsed pain at the tip of his shoulder and tightness around the shoulder blade," "no arm pain at rest, no numbness, but some weakness of the whole arm." (R.27-28.) On examination, Claimant demonstrated "decreased strength in the left upper extremity, normal right upper extremity strength, and intact sensation to touch and pinprick of the bilateral

8

upper extremities." (R.28.) Claimant was "assessed chronic left shoulder pain, with plan for tampering down Norco to one tablet a day." (R.28.)

The ALJ concluded Claimant's statements about the intensity, persistence, and limiting effects of his symptoms were "inconsistent because they are not as limited as alleged." (R.28.) With respect to Claimant's left shoulder pain, the ALJ acknowledged Claimant's "left shoulder pathology with repeat left shoulder surgeries, recurrent instability, and continued left shoulder pain" but concluded "his pain has been primarily managed medicinally without evidence of any side effects." (R.28.) With respect to Claimant's ability to use his left arm, the ALJ stated:

> [w]hile he demonstrated diminished vibratory sensation to the entire hand, and diminished deep tendon reflexes in the upper extremities closer to the alleged onset date and prior to undergoing surgery, he endorsed ability to drive, and put on his shoes and socks (1F/5); he also demonstrated normal Tinel's sign in the wrists and elbows. In addition while the claimant would have more restricted use of the left upper extremity during recovery phases, overall, he has sustained left upper extremity weakness, but physical examination findings reflect improved normal shoulder movement, and intact sensation in the bilateral upper extremities. Notably, the claimant has retained strength in his dominant right upper extremity.

(R.28.)

In the Court's view, the ALJ's analysis fails to support the specific left arm restrictions included in and omitted from the RFC with substantial evidence. The ALJ stated Claimant was more restricted in his left shoulder and arm use "during recovery phases" and that Claimant showed "improved normal shoulder movement," presumably referring to the March 2023 examination finding, but the ALJ did not explain what specific shoulder movements this improvement allowed. In addition, beyond the ALJ's acknowledgement that the Claimant "overall, [] has sustained left

9

upper extremity weakness," he otherwise noted only that "[n]otably, the claimant has retained strength in his dominant right upper extremity." (R.28.)

The Court's difficulty in understanding the basis for the specific RFC restrictions on Claimant's use of his left arm is compounded by the ALJ's consideration of the state agency opinion. ALJ described the state agency consultant opinion on reconsideration, issued on October 7, 2022, as having "limited claimant to performing work at a light range of exertion with occasional pushing/pulling with the left upper extremity, occasional climbing ladders, ropes, and scaffolds, and occasional reaching with the left upper extremity." (R.28.) The ALJ found the reconsideration opinion "persuasive because it is consistent with the evidence available at their time of review" but also noted "they had no occasion to consider the hearing level evidence including the claimant's left shoulder status with weakness and instability post surgeries which supports greater limitation." (R.28.) The ALJ did not, however, identify the greater limitations that he believed were warranted by Claimant's left shoulder weakness and instability post-surgeries.

The Court acknowledges there are certain functional restrictions from the reconsideration opinion that were made more restrictive in the RFC. For instance, while the reconsideration opinion contemplated occasional climbing of ladders, ropes, and scaffolds, the RFC barred any use of ladders, ropes, or scaffolds. The reconsideration opinion also contemplated occasional reaching with the left arm, while the RFC further restricted any reaching overhead but otherwise maintained the allowance of occasional reaching with the left arm in all other directions. The RFC

10

maintained limitations from the reconsideration opinion allowing occasional pushing and pulling with the left arm without any restrictions in terms of weight or force. The ALJ did not mention that the reconsideration opinion also included a restriction to occasional lifting of 20 pounds and frequent lifting of 10 pounds. The RFC omitted any lifting restrictions. (R.88-95.)[5]

In the Court's view, remand is warranted because the Court cannot build a logical bridge from the ALJ's conclusions about the evidence regarding Claimant's left arm to the RFC that omits any lifting or weight restrictions for the left arm and imposes other limitations such as allowing occasional reaching in all directions, and occasional pushing and pulling, with the left arm. Notwithstanding the ALJ's acknowledgement that the evidence supported Claimant's ongoing left arm weakness and instability after two shoulder surgeries and multiple dislocations after those surgeries from November 2022 to January 2023 (notably after the reconsideration opinion was issued in October 2022), the ALJ did not explain why no lifting restrictions were warranted for the left arm, nor did he explain why the record supported the specific restrictions on reaching, pushing, and pulling that were included in the RFC. (R.28.) Although the ALJ summarized Claimant's testimony regarding his left arm limitations, the ALJ did not explain why he viewed that testimony to be inconsistent with other record evidence. (R.26, R.28.) To the contrary, when explaining why he discounted Claimant's statements about his left arm

---

[5] Although Claimant essentially argues lifting restrictions like those proposed in the hypothetical to the VE were warranted, neither Claimant nor the Commissioner addresses the lifting restrictions included in the reconsideration opinion in the briefing.

symptoms, the ALJ acknowledged Claimant "overall, has sustained left upper extremity weakness." (R.28.) While the ALJ found it notable that Claimant "retained strength in his dominant right upper extremity," the ALJ did not explain how that impacted RFC limitations with respect to Claimant's left arm. The ALJ also noted "physical examination findings reflect improved normal shoulder movement" but did not explain how that supported the specific restrictions on reaching, or pushing and pulling, that were included in the RFC.

The record also reflects that adding lifting restrictions to the RFC could have been significant in terms of the availability of existing jobs Claimant could perform. During the examination of the VE, the ALJ asked if adding an additional restriction of "occasionally lift and carry ten pounds and frequently less than ten pounds" would change the availability of the light work jobs the VE identified and which the ALJ ultimately relied on at Step Five. The VE testified, "It would. In order to do these particular light jobs, an individual would need to be able to lift a little bit more than the ten pounds, at least on an occasional basis. So that's going to preclude -- it would put it back down to about the sedentary level." (R.70.) The VE further explained that the reaching restrictions posed in the hypothetical "paired with the limited amount of lifting" would preclude the availability of the identified jobs. (R.70.) The ALJ, however, did not address the VE's testimony in his opinion.

In sum, the ALJ did not address lifting restrictions at all in his opinion despite the ALJ (1) concluding Claimant "overall, . . . has sustained upper left extremity weakness," (2) finding the reconsideration opinion (which the ALJ failed to mention

12

included some lifting restrictions) to be incomplete because it did not consider later evidence of Claimant's "left shoulder status with weakness and instability post surgeries which supports greater limitation," and (3) expressly asking the VE about greater lifting restrictions, who opined such limitations would be work preclusive,. The ALJ therefore failed to build a logical bridge from the record evidence to the RFC. While the Commissioner is correct that an ALJ is not bound to any hypothetical raised with the VE that is not supported by evidence, the record here includes evidence supporting a potential lifting restriction and the ALJ considered such restrictions in his questioning of the VE. *See Gregory W. v. Saul*, 2020 WL 4816075, at *5 (N.D. Ill. Aug. 18, 2020) ("despite specifically contemplating the issue of off-task time here, the ALJ then failed to come to any conclusion regarding the off-task time he asked the VE to consider, which is the antithesis of the logical bridge required of ALJs") (collecting cases for the proposition that an ALJ does consider a particular limitation by specifically asking a VE to consider that limitation in rendering opinions). The Court is ultimately left uncertain how the ALJ weighed or resolved the evidence regarding Claimant's left arm weakness and instability and whether or not it warranted any lifting restrictions.

On this record, remand is necessary to explain whether or not lifting limitations should be included in the RFC. *See, e.g.*, *Elizabeth F. v. Bisignano*, 2026 WL 594780, at *2 (N.D. Ill. Mar. 3, 2026) (remanding where "ALJ questioned the VE about the impact of being off task for 20% of the workday, apart from normal breaks," the VE testified it would preclude all work, yet "[t]he ALJ then failed to address the

13

applicability (or inapplicability) of this 20% off-task time issue when he left this limitation out of Plaintiff's RFC"); *Gregory W.*, 2020 WL 4816075, at \*5 (remanding where "it is clear . . . the ALJ considered the issue of off-task time" because the ALJ "pointedly solicited from the VE his opinions concerning Plaintiff's off-task time" but the ALJ "failed to provide any analysis of whether, for example, Plaintiff was limited by any off-task allowances and, if, so, for how long"); *cf. Campbell v. Bowen*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987) ("An administrative law judge may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable answers.").

Claimant also argues that the RFC is not supported by substantial evidence because the ALJ did not include any limitations on Claimant's use of his left hand. Motion [ECF No. 19] at 8. The ALJ described Claimant's testimony that "he cannot grasp or hold things on the left after a short period due to pain," that he needed help with buttoning and tying shoes, that he had the "ability to button and zip" but it took him longer to do so, "he endorsed having little feeling in the left hand and fingers, and difficulty with movement," and that he can make a sandwich and use the microwave, but has limited ability to do household chores and he uses his right hand to operate the remote while watching television. (R.26.)

The ALJ also described examination findings from November 2021 reporting Claimant's diminished vibratory sensation and diminished deep tendon reflexes in his left hand. (R.27.) The ALJ later appears to discount these findings because they were from "closer to the alleged onset date and prior to undergoing surgery." (R.28.)

14

In that same sentence, however, the ALJ appears to affirmatively rely on other findings from that report to seemingly discount Claimant's ongoing left hand symptoms, noting Claimant demonstrated "normal Tinel's sign in the wrists and elbows" during that same examination. (R.28.) The ALJ does not explain why certain findings from the November 2021 report related to Claimant's left hand should be discounted because they occurred earlier in time and before his later surgeries, while other findings in that report related to his wrist and elbows could be relied on to suggest normal hand use function after the later surgeries. This explanation strikes the Court as internally inconsistent.

In the Motion, Claimant also identifies a December 7, 2022 report from after his shoulder surgeries stating on examination Claimant exhibited curling of his fourth and fifth digits on his left hand, which the ALJ did not address in his opinion. Motion [ECF No. 19] at 8 (citing R.749). This same report also noted Claimant endorsed "left arm weakness and some FMD. Has limited usage of his left arm and can't lift much." (R.747-49.) The ALJ did not address these more recent examination findings, notwithstanding that the ALJ described other records from that same December 7, 2022 visit to Loyola Medicine. (R.27 (citing Exhibit 10F/79).) The Court acknowledges the Commissioner's argument that the ALJ's overlooking of a single medical record standing alone may not warrant remand. Nevertheless, the failure to consider this evidence in combination with the ALJ's other internally inconsistent reasons for rejecting record evidence and Claimant's testimony about his limited left hand use persuades the Court that this issue warrants remand.

15

To that end, the ALJ rejected Claimant's testimony about any continuing left hand use limitations after his shoulder surgeries because Claimant "endorsed ability to drive, and put on his shoes and socks." (R.28.) The Commissioner acknowledges Claimant's driving abilities "did come into play" when the ALJ was "evaluating plaintiff's ability to use his hand," but says that was not an error because the ALJ cited record evidence stating Claimant "is able to drive a car." Response [ECF No. 24] at 9-10 n.5. In the Court's view, there is an internal inconsistency in the ALJ's reasoning with respect to Claimant's driving. Earlier in the opinion, the ALJ acknowledged Claimant no longer had a driver's license and relied on public transportation. (R.24.) Claimant testified that he does not have a driver's license and has not driven in 20 years due to his reduced vision/blindness in his left eye. (R.61.) The function report submitted by Claimant's grandmother noted Claimant did not drive and did not have a driver's license, and that Claimant had problems seeing due to his left eye.  (R.320-327.) The ALJ does not explain how a reference in medical records to Claimant's "ability to drive," given that Claimant does not have a driver's license and does not drive, provides relevant evidence with respect to his current ability to use his left hand. Nor does the Commissioner resolve this inconsistency, asserting on the one hand that "the ALJ was entirely correct" in noting "the medical records endorsed [Claimant's] ability to drive" while also stating "the ALJ was aware that [Claimant] was now taking public transportation as [Claimant] no longer had a driver's license." Response [ECF No. 24] at 9-10.[6]

---

[6] The Commissioner also says the ALJ "declined–as did the state-agency doctor on reconsideration–to include any handling or fingering restrictions" in the RFC. Response [ECF

The Court acknowledges the ALJ also rejected Claimant's testimony regarding his left hand based on Claimant's ability to put on shoes and socks. In the Court's view, the ALJ does not adequately explain how the ability to put on shoes and socks provides a basis for discounting Claimant's testimony about other ways in which his use of his left hand was limited, including that it takes him longer to button and zip, that he had little feeling in his left hand and fingers, and that he used his right hand to control a remote for the television. (R.55-59.)

Based on all the above, the Court concludes remand is warranted due to the internal inconsistencies in the ALJ's explanation for why he rejected record evidence and Claimant's testimony regarding ongoing limitations in using his left hand to conclude no restrictions on Claimant's left hand use were warranted in the RFC.

Having determined that remand is warranted, the Court declines in its discretion to consider Claimant's remaining arguments. The Court notes one additional concern with the ALJ's opinion that also warrants a closer look on remand. At Step Two, the ALJ found Claimant's "congenital left corneal absence with baseline blurry vision" was a non-severe impairment because it resulted in "no more than minimal functional limitations." (R.23.) The ALJ then assessed an RFC that did not include any visually related restrictions. (R. 25.) At Step Four, the ALJ described Claimant's testimony regarding his "blindness" which Claimant testified affected his "seeing" and the ALJ further noted Claimant testified he "cannot see out of left eye

No. 24] at 10. The ALJ did not make any mention of this finding in the reconsideration opinion nor did he rely on it as a basis for rejecting Claimant's limitations in his left hand use. Accordingly, the Court cannot rely on this *post hoc* justification for the ALJ's omission of any left hand use limitations in the RFC.

17

due to a birth defect." (R.26) In addition, the ALJ stated that Claimant testified that he "has problems seeing out of his one 'good' eye, and wears glasses." (*Id.*) The ALJ also described a neurosurgery report from November 2021 where "[o]n examination [Claimant] demonstrated left (eye) esotropia, but full visual field to finger confrontation with the right eye . . ." (R.27.) Beyond this, there are no other references to Claimant's vision in the opinion.

The ALJ must address the combined effect of all medically determinable impairments, including any non-severe impairments. *See Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("As we—and other circuits—have emphasized repeatedly in reviewing denials of disability benefits by the Social Security Administration's administrative law judges, the combined effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling."); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of Golembiewski's impairments was "severe," the ALJ needed to consider the aggregate effect of this entire constellation of ailments– including those impairments that in isolation are not severe."); 20 C.F.R. § 404.1545(a)(2). The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

Claimant argues the RFC is not supported by substantial evidence because the ALJ failed to include any limitations related to Claimant's left eye blindness in the RFC or explain why no such limitations were warranted, while the Commissioner says that Claimant failed to identify evidence of any specific additional limitations that were warranted due to Claimant's left eye blindness. While the Court acknowledges Claimant's explanation of how his left eye impairment limited his functional abilities is thin, the record is undisputed that Claimant had little to no vision in his left eye. Claimant testified that he experiences blurry vision when viewing computer screens all day long (R.60) and, as discussed above, that he is not able to drive due to his impaired vision. The ALJ did not provide any explanation for why he did not include any limitations related to Claimant's vision impairment in the RFC. *See, e.g.*, *RuthAnn G. v. Saul*, 2021 WL 2349671, at \*7 (N.D. Ind. June 9, 2021) ("In light of Plaintiff's allegations of eye pain, this Court finds that the ALJ erred in not explaining how she considered the functionally limiting effects of Plaintiff's severe and non-severe impairments, including her eye pain."); *Thomas-Edwards v. Colvin*, 2014 WL 4794180, at \*5–6 (N.D. Ind. Sept. 24, 2014) ("The omission of any discussion of Plaintiff's visual limitations in formulating the RFC requires remand so that the Court can trace the path of the ALJ's reasoning from the evidence to the RFC determination."). On remand, Claimant's visual limitations should be considered in formulating the RFC and the decision to include or not include visual limitations should be explained.

## CONCLUSION

Accordingly, for all the reasons set forth above, the Court grants Claimant's Motion [ECF No. 19]. In accordance with the fourth sentence of 42 U.S.C. § 405(g), the Court remands this case to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 17, 2026